UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

KHIRY ROUSER,

        Plaintiff,                    Case No. 1:21-cv-305

v.                                             Hon. Hala Y. Jarbou

UNKNOWN BOEREMA, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants McCary, Spencley, and Holden under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's due process, access to courts, and cruel and unusual punishment claims against Defendant Boerema.

**Discussion**

**I.      Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officer Unknown Boerema, Resident Unit Manager Unknown McCary, Assistant Deputy Warden Unknown Spencley, and Prison Counselor Unknown Holden.

Plaintiff's handwritten complaint is very faint and difficult to read. However, Plaintiff appears to be alleging that on February 21, 2020, he wrote a grievance on Defendant Boerema for attempting to incite Plaintiff into hitting him so that Plaintiff would get a misconduct and Defendant Boerema would get paid time off. On August 6, 2020, Plaintiff noticed Defendant Boerema take his food tray from a different area than the other trays. When Plaintiff asked about this, Defendant Boerema yelled that Plaintiff was always crying and called Plaintiff a "motherfucker." Plaintiff asked for a grievance. Later that day, Defendant Boerema wrote a false class II misconduct for insolence[1] on Plaintiff in order to avoid the grievance process, since MDOC policy states that events related to a misconduct ticket are not grievable. Plaintiff became very distressed by Defendant Boerema's conduct and kited health care.

On August 7, 2020, Defendant Boerema again attempted to give Plaintiff a food tray from an area that was separate from the rest of the food trays. Plaintiff immediately returned to his cell to file a grievance. On August 10, 2020, Defendant McCary interviewed Plaintiff on the August 6, 2020, misconduct ticket. Plaintiff explained the situation, but Defendant McCary stated that he was still going to find Plaintiff guilty. Defendant McCary refused to interview any

---

[1] *See* ECF No. 1-8, PageID.35.

2

prisoner witnesses because he believed that they would lie for Plaintiff. Plaintiff was found guilty of the misconduct.

On August 14, 2020, Plaintiff filed an appeal of the misconduct, which was returned to Plaintiff a day before the deadline with a request for proper documentation. However, when it was returned, the camera showed that it had the proper document attached. Therefore, Plaintiff filed a grievance on Defendant Spencley for fabricating a reason not to process Plaintiff's appeal.

Plaintiff then filed a petition for judicial review. On September 1, 2020, Plaintiff was called out to get his affidavit notarized. However, Defendant Holden refused to notarize it, telling Plaintiff that it was not a real court proceeding. Plaintiff claims that Defendant Holden was actually motivated by a desire to protect her co-workers. Plaintiff filed a grievance. On September 15, 2020, Plaintiff sent requests for a polygraph test. On October 17, 2020, Plaintiff again noticed Defendant Boerema take his food tray from a different area than the other trays, so Plaintiff felt forced to go without eating.

Plaintiff claims that Defendants violated his right to procedural due process, to access the courts, to be free from retaliation, and to be free from cruel and unusual punishment. Plaintiff seeks damages and equitable relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

3

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.   Procedural due process

Plaintiff asserts that Defendant Boerema violated his due process rights when he wrote a false class II misconduct ticket on him, and that Defendants McCary, Spencley, and Holden violated his due process rights when they interfered with his ability to challenge the misconduct. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in

4

prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).  Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B (eff. July 1, 2018), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.  The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct.  (*See* Policy Directive 03.03.105, ¶ AAAA).  Therefore, contrary to the assertion in his complaint, Plaintiff could not have been denied good time or disciplinary credits as a result of his Class II misconduct convictions.  The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process.  *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct conviction.

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation.  *See Sandin*, 515 U.S. at 472; *see also Ingram*, 94 F. App'x at 273 (holding that unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails).  Plaintiff has not identified any significant deprivation arising from his misconduct convictions.  Accordingly, he fails to state a viable due process claim related to the handling of his misconduct.

5

Plaintiff also claims that Defendant Boerema interfered with his ability to pursue grievance remedies by writing the misconduct ticket. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Boerema's action in preventing Plaintiff from pursing grievance remedies did not deprive him of due process.

## IV.     Access to the courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Plaintiff claims that Defendants McCary, Spencley, and Holden interfered with his ability to file a petition for judicial review challenging his misconduct conviction. A petition for judicial review of a misconduct conviction is not an attack on the prisoner's conviction or sentence; nor is it a challenge to the conditions of confinement. *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005); *see also Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (holding that the inability to appeal a misconduct conviction does not amount to actual injury); *c.f. Thomas v. Eby*,

7

481 F.3d 434, 440 (6th Cir. 2007) (holding that a major misconduct conviction does not affect the duration of a prisoner's sentence in Michigan for prisoners, like Petitioner, who were convicted after 1987). Therefore, Plaintiff's inability to file a petition for judicial review does not constitute actual injury.

Plaintiff also contends that Defendant Boerema wrote the misconduct ticket to prevent Plaintiff from pursuing relief via the grievance procedure with regard to Plaintiff's request for a grievance form on August 6, 2020. Plaintiff's right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis*, 518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821–24. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). As a consequence, Plaintiff fails to state an access to courts claim against Defendant Boerema for interfering with his grievance.

V.   **Eighth Amendment**

Plaintiff claims that Defendant Boerema subjected him to cruel and unusual punishment when he verbally harassed Plaintiff on February 1, 2020, in an attempt to get Plaintiff to attack him, and on August 6, 2020, when he called Plaintiff a "motherfucker" who was always crying. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene

8

society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action,

9

statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Boerema arising from his alleged verbal abuse.

Plaintiff also asserts that Defendant Boerema violated the Eighth Amendment when he tried to give Plaintiff food trays from a separate area from the rest of the food trays on August 6, 2020, August 7, 2020, and October 17, 2020. Plaintiff makes a conclusory assertion that Defendant Boerema was attempting to give him a contaminated food tray. However, Plaintiff fails to allege any specific facts in support of this conclusion. Moreover, the denial of three meals over a period of two months does not constitute a sufficiently serious risk to Plaintiff's health or safety to state an Eighth Amendment claim. Therefore, Plaintiff's Eighth Amendment claims against Defendant Boerema are properly dismissed.

**VI.   Retaliation**

Plaintiff claims that Defendant Boerema retaliated against him for filing the February 1, 2020, grievance by taking Plaintiff's food tray from a separate area, which Plaintiff believes was contaminated, and asking him why he was always "crying" when Plaintiff questioned this conduct. Plaintiff also claims that the August 6, 2020, misconduct was written in retaliation for Plaintiff's request for a grievance form.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in

protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben*, 887 F.3d at 265; *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Therefore, Plaintiff's request for a grievance form is also protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the

11

plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

In *Thaddeus-X*, the Sixth Circuit recognized that some threats and deprivations are too minimal to constitute adverse action. Citing *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the *Thaddeus-X* court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "'trivialize the First Amendment.'" *Thaddeus-X*, 175 F.3d at 397 (citing *Bart*, 677 F.2d at 625). Therefore, the Court concludes that Plaintiff's claims regarding verbal harassment and attempting to give Plaintiff a tray from a separate area are not sufficiently adverse to support a retaliation claim.

With regard to Plaintiff's claim that the misconduct ticket was retaliatory, the Court notes that Plaintiff received fifteen days' loss of privileges as a result of the guilty finding. (ECF No. 1-8, PageID.35.) Even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *Maben*, 887 F.3d at 266–67 (6th Cir. 2018) (quoting *Hill*, 630 F3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")). The *Maben* court noted the contrary holding in *Ingram*, 94 F. App'x. at 273 (citing *Thaddeus-X*, 175 F.3d at 396–97) (14 days' loss of privileges does not constitute an adverse action); but, because *Maben* was a published opinion, it effectively overruled *Ingram*. Therefore, Plaintiff's claim that Defendant Boerema retaliated against him by giving him a false misconduct ticket is not frivolous and may not be dismissed on initial review.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants McCary, Spencley, and Holden will be dismissed for failure to

state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, the due process, access to courts, and cruel and unusual punishment claims against Defendant Boerema.  Plaintiff's claim that Defendant Boerema wrote a retaliatory misconduct ticket against him remains in the case.

An order consistent with this opinion will be entered.


Dated:   July 27, 2021                                     /s/ Hala Y. Jarbou
                                                       HALA Y. JARBOU
                                                       UNITED STATES DISTRICT JUDGE